Dennis J. SCHULLER,
Plaintiff-Appellant,

v.

HY–VEE FOOD STORES, INC.,
Defendant-Appellee.

No. 85–1530.

Court of Appeals of Iowa.

March 31, 1987.

James W. Affeldt and Lew Eells, of Eells, Blackstock, Affeldt & Harms, Cedar Rapids, for plaintiff-appellant.

James F. Pickens and Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for defendant-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff appeals from the trial court's judgment awarding him limited damages for injuries sustained after he fell over an ashtray canister in the defendant's supermarket. The plaintiff claims that the trial court erred in failing to grant the plaintiff a directed verdict, asserting that there was insufficient evidence regarding his comparative negligence and that the trial court erred in submitting instructions on plaintiff's contributory negligence and refusing to submit an instruction on puni-tive damages. The plaintiff also asserts that the trial court erred in overruling his motion for judgment notwithstanding the verdict and motion for new trial in which the plaintiff raised most of the above issues and the claim that the award was inadequate. The plaintiff finally contends that the trial court erred in not admitting evidence regarding hearsay testimony from an unknown declarant who gave the plaintiff at the time of the accident an opinion about the location of the ashtray canister. We affirm.

The plaintiff, Dennis Schuller, brought this action for damages for injuries sustained in a fall after he tripped over an ashtray canister at a Hy-Vee supermarket in Cedar Rapids on April 8, 1979. This case has been the subject of two prior appeals. The pertinent facts of this case are fully set forth in the first appeal, *Schuller v. Hy-Vee Food Stores, Inc.*, 328 N.W.2d 328 (Iowa 1982), wherein the Iowa Supreme Court reversed a jury verdict in favor of Hy-Vee on the grounds that the trial court erred in refusing one of plaintiff's requested jury instructions and refusing to modify a contributory negligence instruction. Following the plaintiff's second trial, the plaintiff again appealed and we reversed, in an unpublished opinion, on the grounds of error in one jury instruction, 364 N.W.2d 274 (Iowa App.1984). Further review was declined by the Iowa Supreme Court.

During the present trial, the plaintiff presented detailed testimony regarding the accident. This testimony included the location of shopping carts and people in the aisle at the time of the accident and the location of the various displays he was looking at approximately at the time of the accident. Through the testimony of an engineer, the plaintiff attempted to show that all these factors taken together would have prevented the plaintiff from seeing the ashtray canister before he tripped over it. The plaintiff attempted to introduce testimony that immediately after he tripped over the ashtray, an unidentified man helped him up and stated to the plaintiff that the ashtray was in a "stupid place."

The defendant objected to this hearsay statement on the basis that the prejudicial effect of the testimony outweighed its probative value. The court sustained the defendant's objections.

The parties also presented evidence regarding the plaintiff's damages. The plaintiff introduced evidence that as a result of the fall, he sustained injuries to his wrist preventing his full practice of dentistry for four and one-half years after the accident. The defendant introduced evidence from several physicians indicating that the plaintiff should not have suffered a permanent disability, based on the finding that there was not sufficient physical evidence supporting the magnitude of the injury the plaintiff claimed.

At the close of plaintiff's case and submission of the entire case, the plaintiff moved for a directed verdict on the basis that there was insufficient evidence of plaintiff's negligence. The trial court overruled this motion. The plaintiff objected to the trial court's instruction on his negligence consisting of his failure to keep a proper lookout and his negligence in falling over the ashtray. The plaintiff additionally objected to the trial court's refusal to instruct the jury on punitive damages. The trial court subsequently overruled these objections.

The jury apportioned 10% of the parties' combined negligence to the defendant and 90% to the plaintiff. The jury found that the plaintiff had been damaged in the amount of $25,457.00, but upon apportionment of negligence, the judgment was reduced to $2,545.70. The plaintiff timely filed a motion for new trial and motion for judgment notwithstanding the verdict. The trial court subsequently denied the posttrial motions, and the plaintiff has appealed.

### I.

We first address plaintiff's claim that the trial court erred in failing to grant plaintiff's motion for directed verdict. Our scope of review is on assigned error. Iowa R.App.P. 4. In determining whether a jury question was engendered when a party seeks a directed verdict, we apply the same principles as the trial court; specifically, we view the evidence in the light most favorable to the nonmoving party, regardless of whether such evidence is contradicted, to determine if reasonable minds could differ on the issue. *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa Ct.App.1984). If reasonable minds could differ, the issue is for the jury. *Id.* It is incumbent on the plaintiff moving for a directed verdict to present substantial evidence on each element of the claim to determine if a reasonable trier of fact could find for the plaintiff. *Paulsen v. Russell*, 300 N.W.2d 289, 296 (Iowa 1981). Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion. *Baty v. Binns*, 354 N.W.2d 777, 780 (Iowa 1984).

The plaintiff contends that the only evidence offered by the defendant was the testimony of Kevin Hormann, an employee at Hy-Vee. Hormann testified that the plaintiff told him that he (plaintiff) was in a hurry at the time he tripped over the ashtray. The plaintiff contends that this evidence was insufficient to generate a jury question and that he was therefore entitled to a directed verdict. We disagree.

The plaintiff testified at trial that his attention was diverted to the grocery displays and that therefore he was not watching his intended path. On cross-examination, however, the plaintiff admitted that there was nothing about any of the displays which would have distracted him from paying attention to where he was walking. The plaintiff testified that the beer display was about shoulder high. The plaintiff testified that he was about five feet five inches tall and that his eye level was at five feet three inches. The plaintiff, however, testified that the beer display was about three feet tall. Though the plaintiff testified that the height of the beer display and location of the ashtray prevented him from seeing the ashtray in the aisle, the plaintiff provided a detailed account of what he did see in the aisle.

The plaintiff testified that as he rounded the corner of the beer display, he saw a

man pushing a cart towards him. The plaintiff observed that there was a little girl in the cart. The plaintiff testified that the man was looking at the grocery displays and was not looking in the direction of the plaintiff. The plaintiff testified there were groceries in the cart. The plaintiff additionally testified that he also observed a lady further down the aisle pushing a cart in his direction. The plaintiff testified that her eyes were looking straight ahead.

The plaintiff offered much testimony concerning the location of the ashtray and the man and his cart and the distances of each from the corner of the beer display. From these figures, the plaintiff's witness, Dr. James Buck, an engineer, concluded that the plaintiff would have had little time to avoid the ashtray. However, Dr. Buck, in making his conclusions, admitted that he assumed that (1) the plaintiff was looking where he was walking; (2) the plaintiff was traveling and rounding the corner of the beer display at a constant rate of speed; (3) the plaintiff's stride was constant and equal; and (4) the plaintiff did not pause while rounding the corner. Dr. Buck stated that if these assumptions were not true, his calculations concerning the plaintiff's reaction time would be incorrect. The defendant introduced testimony from witness Hormann that plaintiff had stated to him that he (plaintiff) had been in a hurry, which the plaintiff denied.

■ Reviewing these facts in a light most favorable to the defendant, we conclude that reasonable minds could differ as to whether the plaintiff was paying attention to where he was walking and that therefore the facts generated a jury question. We therefore hold that the trial court did not err in denying the plaintiff's motion for a directed verdict.

## II.

The plaintiff next contends that the trial court erred in submitting instructions on plaintiff's contributory fault and refusing to submit an instruction on punitive damages. The plaintiff argues that Instruction Nos. 18, 31, and 32 were duplicative, had no basis for their submission, and were confusing to the jury. We conclude that the trial court did not err in submitting Instruction Nos. 18, 31, and 32.

·Instruction No. 18 provided as follows: The mere fact that the plaintiff Dennis Schuller fell in the store of the defendant and claims he was injured is not, in itself, sufficient to show that either he or the defendant was negligent. The burden is upon the party making the claim to establish that the other party was negligent, and this must be done by the greater weight or preponderance of the evidence.

Instruction No. 31 provided as follows: The law provides that a person using an aisle in a grocery store shall keep a "proper lookout."

By a "proper lookout" is meant that lookout which would be maintained by an ordinary, reasonable and prudent person under the same or similar circumstances. "Proper lookout" means more than merely to look straight ahead, or more than seeing the object. It implies being watchful of the movements of oneself in relation to the things seen and which could have been discerned or seen in the exercise of ordinary care.

In considering what is a proper lookout, you may consider whether or not the attention of the plaintiff was distracted by any display of merchandise. A store owner expects and intends that persons in its store will look at the goods which are displayed, to attract their attention, and the store owner cannot complain if such a person looks at displayed goods instead of the floor. The customer is not bound to the same care to avoid an obstacle in a store as would a pedestrian on the street, and the store owner's care must be correspondingly greater. Ordinarily the customer has a right to assume the floor is free of obstructions and pitfalls. This does not mean a customer may ignore a hazard that is apparent, foreseeable and known to the customer as to the storekeeper.

In considering whether or not the plaintiff, Dennis J. Schuller, maintained a

proper lookout at all times, you should consider all the facts and circumstances of the case.

If you find that the plaintiff, Dennis J. Schuller, failed to keep a proper lookout, such a failure would constitute negligence on his part.

Instruction No. 32, also submitted to the jury, stated as follows:

It is the claim of the defendant that the plaintiff, Dennis J. Schuller, was guilty of negligence in failing to avoid the cigarette ashtray canister which it claims was located in plain sight for him.

In considering what was in plain sight for the plaintiff, you may consider whether or not the attention of the plaintiff was distracted by any display of merchandise. A store owner expects and intends that persons in the store will look at the goods that are displayed to attract their attention, and the store owner cannot complain if such a person looks at the displayed goods instead of at the floor. The customer is not bound to the same care to avoid an obstacle in a store as a pedestrian on the street, and the store owner's care must be correspondingly greater. Ordinarily the customer has a right to assume the floor is free from obstructions and pitfalls. This does not mean a customer may ignore a hazard that is as apparent, foreseeable and known to the customer as to the storekeeper.

If you find that the cigarette ashtray canister was in fact located in plain sight to the plaintiff, Dennis J. Schuller, under the circumstances and that the ordinarily reasonable and prudent person would have avoided falling over the cigarette ashtray canister where it was so located, then plaintiff Dennis J. Schuller, would be guilty of negligence in this respect. If you find that the cigarette ashtray canister was not located in plain sight of the plaintiff, Dennis J. Schuller, or that the ordinary, careful and prudent person would have failed to avoid the ashtray canister where it was located, then the plaintiff, Dennis J. Schuller, would not be negligent in this respect.

■ Under Iowa law, a trial court is not required to word jury instructions in any particular way. *State v. Morrison,* 368 N.W.2d 173, 175 (Iowa 1985); *Knauss v. City of Des Moines,* 357 N.W.2d 573, 577 (Iowa 1984). If an instruction correctly states the applicable law, it will be deemed proper even though an alternative is available. *Morrison,* 368 N.W.2d at 175. The trial courts therefore generally have much discretion in framing jury instructions. *United States v. Robinson,* 774 F.2d 261, 272 (8th Cir.1985). In determining whether the trial court's instructions fairly submitted to the jury all factual issues which were properly pleaded and supported by substantial evidence, we view the evidence in a light most favorable to the party requesting the instruction. *Knauss,* 357 N.W.2d at 576. We look to the jury instructions as a whole in determining whether or not they are proper. *Bossuyt v. Osage Farmers National Bank,* 360 N.W.2d 769, 774 (Iowa 1985). Our courts, however, have recognized that the giving of instructions which are conflicting or confusing is reversible error. *Sammons v. Smith,* 353 N.W.2d 380, 385 (Iowa 1984). Objections or exceptions to jury instructions must be made before arguments to the jury. Iowa R.Civ.P. 196. No grounds or objections may be asserted thereafter. *Id.*

■ Applying the foregoing principles to the present case, we find no merit in plaintiff's argument. We first note that the plaintiff does not claim that Instruction No. 18 is an inaccurate statement, nor did he object to the submission of this instruction to the jury. The record further reveals that the plaintiff made numerous objections to the original instructions of the trial court, including Instruction No. 31, dealing with the plaintiff's failure to maintain a proper lookout. The trial court accepted plaintiff's objection and submitted Instruction No. 31 virtually verbatim as dictated by the plaintiff. Instruction No. 31, as submitted by the trial court and dictated by the plaintiff, is in substantial compliance with the pronouncement of the Iowa Supreme Court in *Schuller v. Hy-Vee Foods*

*Stores, Inc.,* 328 N.W.2d 328, 332–33 (Iowa 1982).

Concerning Instruction No. 32, we first note that the latter portion of Instruction No. 32 was dictated verbatim by the plaintiff and he therefore cannot now object to that instruction. Nor do we agree with plaintiff's apparent argument that Instruction Nos. 18 and 32 were inconsistent. Instruction No. 18 informs the jury that *the fact that plaintiff fell and claimed to be injured* was not *in itself* sufficient to show that either party was negligent and that the burden of proof was on the plaintiff to show negligence on the part of the defendant. Instruction No. 32 states to the jury that it was the *claim* of the defendant that the plaintiff was guilty of negligence in failing to avoid the ashtray which *it claims* was located in plain sight for him. This instruction, as submitted to the jury, completely complied with conclusions of law opined in *Schuller,* 328 N.W.2d at 332–33. We therefore find no inconsistency between Instruction Nos. 18 and 32.

The plaintiff in the present case either saw the ashtray before he tripped and fell or he did not. One of the fighting issues in this case was whether or not the plaintiff could have seen the ashtray before he fell. Only the plaintiff knew whether or not he saw it. Such an issue was definitely for the jury to weigh after consideration of all the evidence, and the jury is not required to accept testimony which it finds to be unreliable, although it may be uncontradicted. *Knight v. Anderson,* 292 N.W.2d 411 (Iowa 1980). The jury certainly could have found that the defendant had seen the ashtray before he fell, and it could have also found from the evidence that the plaintiff was negligent in not seeing the ashtray or failing to keep a proper lookout. Therefore, we find no error in the instructions as submitted to the jury.

▪ The plaintiff also contends that the trial court erred in failing to instruct the jury on punitive damages. We disagree. "Punitive damages are allowable upon 'an adequate showing of wrongful or illegal conduct committed or continued with the willful or reckless disregard of plaintiff's rights.'" *Kellar v. Peoples Natural Gas Co.,* 352 N.W.2d 688, 693 (Iowa Ct.App. 1984) (citing *Earl v. Clark,* 219 N.W.2d 487, 491 (Iowa 1974)). The Iowa Supreme Court has clearly stated that there is a difference between "mere" negligence such as would justify general damages and recklessness or willfulness that could lead to punitive damages. "We have required evidence of a persistent course of conduct to show no care with disregard for consequences. If it were not so required, we would be allowing an inference of recklessness from every negligent act." *Vipond v. Jergensen,* 260 Iowa 646, 650, 148 N.W.2d 598, 600–01 (1967). While the factual circumstances of the present case could lead the jury to conclude that the defendant was negligent in placing the ashtray in the aisle, we do not believe that defendant's conduct can be deemed a persistent course of conduct with disregard for the consequences that could lead to a finding of recklessness and consequent liability for punitive damages. We therefore hold that the trial court did not err in refusing to instruct the jury on punitive damages.

### III.

The plaintiff next contends that the trial court erred in overruling the plaintiff's motion for judgment notwithstanding the verdict. The plaintiff contends that the defendant failed in satisfying its burden of proof in showing that the plaintiff was contributorily negligent. We disagree.

▪ Iowa Rule of Civil Procedure 243(b) provides that a party may have judgment in his favor despite an adverse verdict if the movant was entitled to have a verdict directed for him at the close of all the evidence. A motion for judgment notwithstanding the verdict made pursuant to rule 243, must, however, stand on grounds raised in the directed verdict motion. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477 (Iowa 1982) (citing *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978)). Our review is limited to the grounds raised in the directed verdict motion. *Id.* We view the evidence in the light most favorable to the party against whom the motion is di-

rected. *Id.* If there is substantial evidence in support of each element of the plaintiff's claim, the motion for judgment notwithstanding the verdict should be granted. *Wernimont v. State,* 312 N.W.2d 568, 570 (Iowa 1981). Additionally, we must review the evidence in a light most favorable to the nonmoving party regardless of whether the evidence was contradicted, and we may draw every legitimate inference that may be fairly and reasonably deducted therefrom. *Winter v. Honegger's & Co., Inc.,* 215 N.W.2d 316, 321 (Iowa 1974).

We find that the trial court was correct in overruling the plaintiff's motion for judgment notwithstanding the verdict. As we noted in Division I of this opinion, the plaintiff relied heavily on the testimony of Dr. Buck and the detailed calculations he made regarding the location of the ashtray and the reaction time the plaintiff had to avoid the ashtray. As we stated earlier, however, Dr. Buck's calculations were based on four assumptions regarding the rate of speed the plaintiff was walking, the length of plaintiff's stride, and that the plaintiff was looking where he was walking. Dr. Buck admitted his calculations would be incorrect if any of the factors on which he based his opinion were not true. Dr. Buck further admitted that his calculations as to when the ashtray could first be seen were made to the center of the canister and not to the farther edge which would be first in view to a person who was looking.

Though Dr. Buck testified that it would have been very difficult for the plaintiff to have seen the ashtray canister due to the height of the beer display, the jury was not bound to accept this expert's testimony as true. The jury was free to accept or reject Dr. Buck's opinion, even if uncontroverted. *Bandstra v. International Harvester Co.,* 367 N.W.2d 282, 289 (Iowa Ct.App.1985). The plaintiff at trial gave a very detailed description of the aisle as it appeared when he rounded the corner. He described the locations of the people, what they were looking at, what their movements were, and what was in their grocery carts. Given the fact that the plaintiff described the aisle in such detail, the jury could well have found that the plaintiff could have prevented his fall had he been looking at the path in which he was walking. Additionally, the plaintiff admitted to a store employee that he had been in a hurry when he rounded the corner. From these facts reasonable minds could differ on the question of whether the plaintiff was negligent in failing to see or avoid the ashtray. Because it was the province of the jury to weigh such evidence, we cannot say the trial court erred in overruling the plaintiff's motion for judgment notwithstanding the verdict.

■ The plaintiff, however, additionally argues that the trial court should have sustained the motion for judgment notwithstanding the verdict on the issue of damages or, in the alternative, granted his motion for additur, increasing the amount of judgment from $2,545.70 to $441,141.00. The plaintiff argues that his alleged injuries and claim for past loss of time are uncontroverted. There is substantial evidence in the record with respect to the lack of severity in plaintiff's condition and evidence that disputes his claim that he was unable to work for four and one-half years.

Dr. John Koch, an orthopedist who twice examined the plaintiff, once before the second trial and again before the third trial, testified that he "could find no objective or physical basis" for the plaintiff's alleged difficulty in returning to work. Dr. Koch testified he believed that an examination of plaintiff's medical history revealed "that there were other than physical reasons for his difficulty," and that such problems were a result of "things that were within himself, maybe psychological or hysterical problems, or possibly ... concern of a secondary gain...."

Dr. Leland Hawkins, who performed the surgery on the plaintiff's wrist, testified that the plaintiff has suffered no loss of function in his hand or other permanent disability. Dr. Hawkins could provide no explanation as to why the plaintiff was still experiencing pain, but stated the pain could be a result of psychogenic factors. Dr. Hawkins testified that at the time of sur-

gery in 1980, he saw no abnormality in the place where the plaintiff complained of pain.

Connie McNichols, a licensed physical therapist who rendered treatment to the plaintiff, testified that she tested the plaintiff's grip and found it normal for a person of his age. Ms. McNichols testified that the plaintiff ended his treatment with no restrictions.

From this testimony, it is obvious that the plaintiff's injuries were not severe nor were they permanent. None of the plaintiff's attending physicians could offer any rational basis for plaintiff's alleged claims of pain. Though the plaintiff offered the testimony of Richard Neufeld, who negotiates the sale of dental practices, to support his claim that he could have netted $200,000.00 per year from 1980 to the present, this testimony was rebutted by Dr. Arlon Berkhof, a longtime Cedar Rapids dentist, who testified that the number of dentists in Cedar Rapids and the declining economic base would have made it extremely difficult to earn such a large sum. We therefore find no basis for the plaintiff's claim that additur should have been granted.

### IV.

The plaintiff next argues that the trial court abused its discretion in excluding hearsay testimony from an unknown declarant. The plaintiff testified in the first two trials that immediately after he fell an unknown gentleman helped him up and stated to plaintiff that "it was a stupid place for an ashtray." The statement was excluded from the record in each of the two previous trials, but was again offered in the third trial. Both parties presented brief oral arguments with respect to their positions on the excluded evidence. The trial court concluded that the statement would come under the exceptions provided for hearsay under Iowa Rule of Evidence 803. However, because the declarant was unknown and his statement could not be substantiated or attacked on cross-examination, the trial court concluded that under Iowa Rule of Evidence 403, the statement's probative value would be substantially outweighed by its prejudicial effect and therefore excluded the statement.

■ We agree with the trial court's conclusion. While the statement could have been offered as a "present sense impression" under rule 803(1) or "excited utterance" under rule 803(2), it would be extremely difficult, if not impossible, to determine the veracity of the disputed statement. Unlike the situation in *Rhiner v. City of Clive*, 373 N.W.2d 466, 476–77 (Iowa 1985), wherein the defense witness, a police officer who had heard an accomplice's excited utterance that he was sorry that he had beat up a police officer, was called to testify and was available for cross-examination, the declarant in the present case was unknown. The plaintiff could not remember what the declarant looked like, nor could the declarant's statement be attacked on cross-examination. We therefore believe that the unknown declarant's statement was properly excluded on the basis of rule 403. The probative value of such an unverifiable statement would be substantially outweighed by its prejudicial effect.

### V.

The plaintiff finally contends that the trial court erred in failing to grant the plaintiff's motion for new trial. Based upon our holding in Divisions I–IV of today's opinion, we find no merit in plaintiff's argument.

AFFIRMED.