**James McCLEES, Appellant,**

v.

**Louis SULLIVAN,\* Secretary of Health and Human Services, Appellee.**

No. 89–1049.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1989.

Decided July 20, 1989.

Marti D. Nerenstone, Council Bluffs, Iowa, for appellant.

Mary C. Luxa, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge,
BOWMAN, Circuit Judge, and
LARSON,\*\* Senior District Judge.

LAY, Chief Judge.

This is an appeal from the district court's order dismissing the claimant's petition for review on the ground that substantial evidence on the record as a whole supported the Secretary's denial of Social Security benefits. We reverse and remand with directions for a de novo administrative hearing. James McClees is a fifty-four year old man with a ninth grade education who suffers from severe scoliosis as a result of childhood polio and rickets. He also suffers from vertebral and thoracic deformities with his left rib cage being lower than his right rib cage. As a young adult, McClees contracted Bright's Disease. After he recovered, McClees went through rehabilitation services and learned barbering, an occupation which he maintained for twenty-five years. He alleges that because of the standing required of barbering, his severe scoliosis and the continuous strain on his back and chest it was impossible for him to continue working after 1979.

As an adult, McClees sustained a right knee injury and a fractured ankle. In 1976, an EKG confirmed that he has right bundle branch block and left ventricular hypertrophy of his heart. In 1980, McClees was thrown from the back of a pickup truck and was dragged underneath it, crushing his left leg, and requiring the removal of bone fragments and the insertion of two permanent steel screws in his leg.

McClees applied for Supplemental Security Income (SSI) and Social Security disabili-

---

\* Louis W. Sullivan, M.D., succeeded Otis R. Bowen, M.D., as Secretary of Health and Human Services in March 1989. Pursuant to Federal Rule of Appellate Procedure 43(c)(1), his name should be substituted as appellee in this suit.

\*\* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

ty benefits in the fall of 1985. His concurrent claims were denied in December 1985.

McClees was not represented by counsel at the hearing before the Administrative Law Judge (ALJ). The ALJ found that the claimant could not return to his past relevant work, but that he could perform light and sedentary jobs. The ALJ did not find McClees' complaints of pain to be credible, and therefore did not find him disabled. The Appeals Board upheld the determination, and the United States District Court affirmed the decision. McClees now appeals.

McClees claims that the ALJ erroneously rejected his complaints of pain and other limitations. McClees testified at the hearing that he experiences severe and constant pain in his legs, in his lower left side and in his back. He stated that in 1979 he could stand for only an hour at a time and by 1987 he could stand for only fifteen minutes. McClees alleges that his subjective complaints of pain are fully consistent with the medical evidence.

McClees argues that the ALJ improperly placed heavy reliance on an "informational interview" dated March 19, 1986, which was conducted by an anonymous "disability Hearing Officer." The summary is unsigned, and there is no evidence either as to the interviewer's qualifications or as to what evidence was considered by the interviewer. The summary itself states that "[n]o witnesses were present." McClees alleges the Secretary improperly used this unsubstantiated summary to outweigh all other evidence. McClees claims that when he attempted to correct or clarify the report, after he was finally given an opportunity to see it, he was rebuffed by the ALJ. The Secretary answers that the 1986 interview was conducted by a disability examiner. This procedure is authorized by the 1984 Social Security Disability Benefits Reform Act, codified at 20 C.F.R. § 404.906 (1988).

The Supreme Court has concluded that written reports by licensed physicians may be admitted as evidence in a disability hearing and may constitute substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Court reached this conclusion based on several factors which it found to assure the reliability and probative value of the reports. The identity of the reporting physicians was known and the reports were prepared by independent doctors who had no bias or interest in the outcome. The reports were based on personal consultation with the claimant and examination by accepted medical procedures and tests. The reports were available before the hearing and the claimant could have subpoenaed the out-of-court declarants. The Court stated, "[t]he matter comes down to the question of the procedure's integrity and fundamental fairness. We see nothing that works in derogation of that integrity and of that fairness in the admission of consultants' reports, subject as they are to being material and to the use of the subpoena and consequent cross-examination." *Id.* at 410, 91 S.Ct. at 1431.

In this case the informational interview summary was unsigned and unsworn. The summary reports that it was performed by a hearing officer, but does not state who the officer was. Not only is the interviewer's identity unknown, but if the interview was performed by a hearing officer, he or she is not a neutral witness as were the physicians in *Richardson*. The procedures used in the interview were not disclosed. The court notes in *Richardson* the physicians conducted the examination of the claimant according to accepted procedures. *Id.* at 403, 91 S.Ct. at 1428.

In *Richardson*, the Court found the medical reports "may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." *Id.* at 402, 91 S.Ct. at 1428. In this situation it was not possible to either subpoena or cross-examine the interviewer because his identity was unknown. *Cf. Souch v. Califano*, 599 F.2d 577 (4th Cir.

1979).[1]

■ Although hearsay is admissible in administrative hearings [2] and can constitute substantial evidence if it is "sufficiently convincing to a reasonable mind[,]" *McKee v. United States*, 500 F.2d 525, 528, 205 Ct.Cl. 303, 310 (1974), mere hearsay which lacks reliability is not substantial evidence to overcome sworn testimony of a claimant. *Id.* In *McKee*, the court held photographs introduced with captions by unidentified authors were not substantial evidence. *Id.*

It is clear that the anonymous report in this case bears none of the indicia of reliability that the medical reports in *Richardson* did. We cannot say that use of this report is supported by integrity and fundamental fairness.[3]

■ The main issue was the credibility of the claimant's complaints of pain. The vocational expert testified that if the ALJ determined that McClees suffered from the impairments, limitations or restrictions listed in the medical evidence, then McClees would not be able to perform any work activity on a sustained basis. The ALJ almost exclusively relied on the informational interview summary to discredit Mr. McClees. The informal interview contains information which would support a finding of nondisability. The unidentified interviewer reported that McClees stated he rides a ten-speed bike two miles a day, bowls using a twelve pound ball on a weekly basis, and walks six blocks one way to the coffee shop every day. At the hearing McClees testified it was only a two block walk to the coffee shop. McClees also testified that he started to bowl in 1986, but that he only bowled two or three weeks and then pulled a muscle in his leg and had to quit. He was also afraid he would twist his leg. The ALJ did not question McClees

---

1. In *Souch* the ALJ denied black lung benefits on the basis of certain x-rays. The court held it was unconstitutional to deny benefits on that basis, when the ALJ denied the claimant's request to subpoena physicians who could interpret the x-rays. *Id.* at 580.

2. The Social Security Act does not preclude hearsay evidence and the ALJ's proceedings are not governed by the Federal Rules of Evidence. 42 U.S.C. § 405(b); *Richardson* at 400, 91 S.Ct. at 1426–27.

3. At the hearing, McClees was unrepresented. The ALJ asked McClees whether he had any objections to any of the medical or other exhibits. The following exchange took place:

   ALJ: * * * Do you have any objections to any of the medical and other exhibits marked 1 through 34?
   CLMT: Yes, I had a personal interview with a man—he must—in the personal interview and [misinterpreted] some of my statements and left (INAUDIBLE)
   ALJ: Okay why don't we do that at the hearing. Is that, is that noted in the—
   CLMT: You have it in the file there.
   ALJ: Okay it's noted in the evidence is it? The results of that interview are noted in the evidence—
   CLMT: It's—yes.
   ALJ: of record here?
   CLMT: Yes sir.
   ALJ: Okay basically what was said and what do you wish corrected?
   CLMT: Well he asked me if I'd be able, would be able to sit, and I can't even sit for not more than an hour.
   ALJ: OK.

   CLMT: You know I've done a lot of thinking about going into clerical work. See I started before I was married to be an accountant but I dropped out (UNINTELLIGIBLE).
   ALJ: OK. Okay any other corrections on this interview?
   CLMT: Then Dr. Crawly (PHONETIC) give me a examination on the pulmonary. They didn't give—conclude their tests.
   ALJ: They didn't what now?
   CLMT: They didn't conclude their tests on my pulmonary functions.
   ALJ: That—the pulmonary function test results are in Exhibit 28. As I see it those are numbers.
   CLMT: M-hm.
   ALJ: Did you wish to see it here?
   CLMT: Yes, I got it here.
   ALJ: Yes, Dr. Crawly recommended pulmonary function tests and those were done by Dr. Anjali (PHONETIC) Angalillo (PHONETIC). Okay, anything else?
   CLMT: No that's all I can think of.
   Transcript at 40–41.
   This conversation on the whole is disjointed. It is clear that Mr. McClees' answers were not responsive to the questions. The ALJ should have examined Mr. McClees directly about the alleged statements in the summary. Mr. McClees' testimony at the hearing was inconsistent with some of the statements alleged in the summary. The ALJ should have inquired further in order to develop the record and to give a full and fair hearing.

about the alleged statement that he rode a bike several miles daily.

Section 404.906 sets up the use of a personal appearance interview, such as was used in this case, as a demonstration project for trial use in certain locations.[4] This court seriously questions the usefulness of anonymous reports such as these. Such use raises questions of lack of fundamental fairness and seriously affects the integrity of the administrative hearing. We hold the report is so lacking in reliability that it does not constitute substantial evidence.

The ALJ's almost exclusive reliance on this anonymous report to discredit McClees was improper. Therefore, this court vacates the district court's decision and we remand to the Secretary for a de novo administrative hearing.

---

4. The code provides the demonstration project would end December 31, 1987, after taking a sample of cases large enough to make a proper evaluation. § 404.906(b). Counsel for the government was not aware whether or not it has been decided to permanently institute such procedure.