James G. ROBERTS, Jr., Plaintiff,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.

No. 00–4098–CV–C–4–SSA–ECF.

United States District Court, W.D. Missouri, Central Division.

May 24, 2001.

### *ORDER*

FENNER, District Judge.

Plaintiff filed two applications for disability insurance benefits under the Social Security Act (the Act). The first was an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et seq.* The second was an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Section 205(g) of the Act, 42 U.S.C. § 405(g) provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3) provides for judicial review to the same extent as the Commissioner's final determination under section 205.

Plaintiff's applications were denied initially and on reconsideration. On August 28, 1998, following a hearing, an Administrative Law Judge (ALJ) rendered a decision, in which he found that plaintiff was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. On April 12, 2000, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.[1]

Judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) is limited to whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir.2000). The court's role is not to reweigh the evidence or try the issues *de novo. McClees v. Shalala,* 2 F.3d 301, 302 (8th Cir.1993). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable person might accept as adequate to support a decision. *Id.; Onstead v. Sullivan,* 962 F.2d 803, 804 (8th Cir.1992). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the Commissioner's decision must be affirmed. *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000).

---

1. Upon review of the record and the briefs of the parties, the defendant's position is found to be persuasive. For the most part, the defendant's brief is adopted without quotation designated.

## I.

Questions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the Commissioner to decide, not the courts. *See Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir.1992); *Benskin v. Bowen,* 830 F.2d 878, 882 (8th Cir.1987). The crucial question is not whether the claimant experiences pain but whether the claimant's credible subjective complaints prevent him or her from performing any type of work. *See McGinnis v. Chater,* 74 F.3d 873, 874 (8th Cir.1996); *Pickner v. Sullivan,* 985 F.2d 401, 404 (8th Cir.1993). If an ALJ explicitly discredits a plaintiff's testimony and gives good reasons for doing so, the court will normally defer to the ALJ's credibility determination. *See Russell v. Sullivan,* 950 F.2d 542, 545 (8th Cir.1991) (citing *Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir.1990)).

In this case, the ALJ specifically found that plaintiff's testimony about his inability to work was not completely credible. The ALJ's consideration of the subjective aspects of plaintiff's complaints comported with the regulations at 20 C.F.R. § 404.1529 and § 416.929 (2000); *see also* Social Security Ruling (SSR) 96–7p. In addition, although the hearing before the ALJ was held in Tampa, Florida, and the ALJ did not note the Eighth Circuit case of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984), the decision of the ALJ complies with framework set forth in *Polaski.* The Commissioner's regulations and *Polaski* require the ALJ to give full consideration to all evidence relating to the claimant's subjective complaints, including such factors as the claimant's prior work records; observations by third parties and physicians regarding the claimant's disability; the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medications; and the claimant's functional restrictions. *See Polaski v. Heckler,* 739 at 1322. If the ALJ finds inconsistencies between plaintiff's subjective complaints and the objective evidence in the records, he may discount such complaints. *Id.*

The ALJ noted that upon review of the entire case, plaintiff's subjective complaints and the objective evidence in the records, he may discount such complaints. *Id.*

The ALJ noted that upon the review of the entire case, plaintiff's subjective complaints were not fully credible, and his symptoms were not as limiting as alleged. Specifically, the ALJ noted that while plaintiff did undergo a procedure to insert a ventricular peritoneal shunt in 1992, plaintiff's work history indicated that he was working up to fifty hours per week between March 1994 and August 1996. Where a claimant has worked with an impairment over a period of years, it cannot be considered disabling at present without showing that there has been a significant deterioration in that impairment. *See Orrick v. Sullivan,* 966 F.2d 368, 370 (8th Cir.1992).

Regarding plaintiff's complaint of hypertension, the ALJ correctly noted that while plaintiff had hypertension as early as 1992, it was controlled by medication. Furthermore, although plaintiff complained of headaches, the medical record showed that they improved with medications. Impairments that are controllable or amenable to treatment do not support a finding of disability. *See Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998).

Furthermore, in assessing plaintiff's credibility, the ALJ noted that plaintiff's testimony was not supported by the medical evidence of record or the testimony of the medical and vocational experts. Specifically, the ALJ noted while plaintiff reported that he no longer smoked, the

record reflected that on April 30, 1998, plaintiff reported to medical personnel that he smoked about three packages of cigarettes per day. The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. *See Wheeler v. Apfel,* 224 F.3d 891 (8th Cir.2000) (citing *Hutton v. Apfel,* 175 F.3d 651, 655 (8th Cir.1999)).

 Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted. *See Morrison v. Apfel,* 146 F.3d 625, 628 (8th Cir.1998); *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998) (citing *Miller v. Shalala,* 8 F.3d 611, 613 (8th Cir.1993) (per curiam)). The fact that the ALJ "did not explicitly discuss each *Polaski* factor in a methodical fashion" is not necessarily fatal to his opinion. *See Brown v. Chater,* 87 F.3d 963, 966 (8th Cir.1996). Furthermore, not every *Polaski* factor may be present in every case. Review of the ALJ's opinion shows that he considered the entire record including objective medical evidence, plaintiff's testimony, medication, treatment measures, and work history.

## II.

In assessing one's residual functional capacity (RFC), it is the ALJ's responsibility to consider all the relevant evidence, including medical records, observations of treating physicians, and others, and plaintiff's own description of his limitations. *See* 20 C.F.R. § 404.1546 and § 416.946 (2000). *See also Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir.2000) (citing *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995)). In the case at bar, the ALJ found in his formal findings that plaintiff had the RFC to perform work related activities except for lifting over 50 pounds at a time, 25

pounds frequently, or working a job requiring depth perception. In addition, plaintiff could sit, stand, and walk up to six hours total in an eight-hour work day and had a moderate restriction in his ability to function socially. Plaintiff contends that the ALJ's RFC finding is flawed for several reasons.

 First, plaintiff contends that the ALJ's RFC analysis is not consistent with the requirements of SSR 96–8p that requires the ALJ to include a specific narrative discussion describing how the evidence supports each conclusion; to assess an individual's ability to perform sustained work activities in a work setting; to describe the maximum amount of each activity; and to explain how the ALJ resolved any inconsistencies or ambiguities in the record. Contrary to plaintiff's contention, the ALJ's decision does comply with SSR 96–8p. The ALJ gave a detailed discussion of all of the relevant medical and nonmedical evidence, discussed plaintiff's ability to perform sustained work activities on a regular and continuing basis, and described the maximum amount of each work related activity.

 In addition, plaintiff contends that the ALJ's RFC assessment is vague as it does not describe or specify what he meant by "mild limitations in depth perception" or "moderately impaired ability to function socially" and if a vocational expert had been called, he would have been required to speculate on the amount of limitations implied by the ALJ's terminology. However, because the ALJ found that plaintiff could perform his past relevant work, his definitions of "mild limitations in depth perception" or "moderately impaired ability to function socially" were not subject to third party interpretation.[2]

2. Although plaintiff did elicit the testimony of a vocational expert, the ALJ did not pose a hypothetical question to the vocational expert,

but rather relied upon the vocational expert's interpretation of plaintiff's past relevant work.

Plaintiff also contends that the ALJ erred by noting in his discussion of plaintiff's RFC that his impairments of "mild limitations in depth perception" and "moderately impaired ability to function socially" did not "significantly adversely affect his residual functional capacity." However, while the ALJ did make such a notation in the discussion section of his decision, such an error is harmless as the ALJ noted in his formal findings that clearly such limitations did have an impact on plaintiff's RFC. Specifically, the ALJ noted in his formal findings that plaintiff had the RFC to perform work related activities except for lifting over 50 pounds at a time, 25 frequently; or working at jobs requiring depth perception; and was moderately restricted in his ability to function socially. Clearly, plaintiff's limitations did significantly affect his ability to perform work or the ALJ would not have included them in the RFC noted in his formal findings.

Further, plaintiff argues that the ALJ erred by failing to elicit the testimony of a vocational expert.[3] In addition, plaintiff argues that an ALJ cannot rely on the medical vocational guidelines when a plaintiff has non-exertional impairments. However, in the case at bar, because plaintiff did not meet his burden of making a *prima facie* showing that he could not return to his past relevant work, the burden never shifted to the Commissioner, and thus, vocational expert testimony was not necessary. *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir.1996). Likewise, the medical vocational guidelines are not applicable unless the claimant has satisfied his burden of proving that he cannot perform past relevant work. *See Walker v. Shalala*, 993 F.2d 630, 632 (8th Cir.1993).

### III.

At step four of the sequential evaluation, the ALJ determined that plaintiff had the RFC to perform his past relevant work as a sales representative, estimator, and exterminator. Plaintiff contends that the ALJ failed to make specific findings in his decision regarding the particular physical and mental demands of plaintiff's past relevant work, either as it was performed in the national or local economies or as performed by plaintiff.

Plaintiff properly notes that the ALJ is required to compare the demands of past relevant work to plaintiff's RFC. *See Pfitzner v. Apfel*, 169 F.3d 566, 568–69 (8th Cir.1999); 20 C.F.R. § 404.1520(c) and § 416.920(e) (2000). However, contrary to plaintiff's contention, the ALJ's decision showed that he did make the required comparison. Although not required to do so, the ALJ consulted a vocational expert in this case. The vocational expert testified that based upon the DICTIONARY OF OCCUPATIONAL TITLES, plaintiff's past relevant work as a home improvement sales representative and exterminator were light and skilled and plaintiff's past relevant work as an estimator was sedentary and skilled. Accordingly, the ALJ did compare plaintiff's past relevant work to his RFC.

In addition, plaintiff testified as to the demands of his past relevant work. While plaintiff's testimony did not support a finding that he had the RFC to perform his past relevant work as an exterminator and installer for a pest company, he did have the RFC to perform his past relevant work as a home improvement sales representative as he performed it. If an individual can perform his past relevant work, either as he performed it, or as the work is

---

**3.** As referenced in the previous footnote, the ALJ did elicit the testimony of a vocational expert, but it was only to specify the requirements of plaintiff's past relevant work.

performed in the national economy, he is not disabled. *See Jones v. Chater*, 86 F.3d 823, 825 (8th Cir.1996).

## IV.

■ Plaintiff contends that the ALJ committed reversible error in failing to meet the government's burden of proof at step five as mandated by 20 C.F.R. § 404.1520 and § 404.1521 (2000) by adopting an RFC that was not based upon all of the evidence. However, as noted in *Young v. Apfel*, 221 F.3d 1065, 1069, n. 5 (8th Cir.2000), RFC is determined at step four, where the burden of proof rests with the claimant. *See* 20 C.F.R. §§ 404.1520(a), (e), (f); 404.1545–46; 404.1560–61; 416.920(a)(e)(f); 416.945–46; 416.960–61 *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995). At step five of the sequential evaluation process, the burden of production shifts to the Commissioner to produce evidence of jobs available in the national economy that can be performed by a person with the claimant's RFC and vocational skills. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995). The ultimate burden of persuasion, however, always remains with the claimant. *See Young*, 221 F.3d at 1069 n. 5. Because this case was decided at step four of the sequential evaluation process, the burden remained with plaintiff and contrary to plaintiff's contention, the burden did not shift to the Commissioner.

■ In regard to plaintiff's allegation that the ALJ failed to properly address plaintiff's mental impairment, the ALJ did specifically and extensively note plaintiff's alleged mental impairment. In support of his contention, plaintiff notes that several medical personnel found that he suffered from a mental disorder. Specifically, plaintiff notes that Sujai D. Nath, M.D., opined that plaintiff suffered from Major Depression that would affect plaintiff's social interaction. However, the ALJ obvi-

ously considered this diagnosis as he found in his formal RFC finding that plaintiff had a "moderate" limitation in social functioning. Furthermore, although Tito Alquizola, M.D., diagnosed plaintiff with situational depression, a mental status examination did not show plaintiff to be significantly impaired and plaintiff admitted that his depression was getting better. Moreover, Sean Harvey, M.D., diagnosed plaintiff with Major Depressive Disorder and opined that plaintiff had a global assessment of functioning (GAF) of 55–60. A GAF of 55–60 represents moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM–IV, 32 (4th Ed.1994). Again, such a finding is not contradictory to the ALJ's ultimate RFC finding that plaintiff had a "moderate" restriction in his ability to function socially.

■ Finally, at the administrative hearing a medical expert, Jeffery Merin, M.D., testified that, while the medical records did not currently suggest an indication of an inorganic mental disorder, he stated that plaintiff's shunt with cyst complications could have resulted in such a disorder. However, plaintiff's shunt surgery took place in 1992, and since then plaintiff was able to work without complications. He only ceased working due to headaches which he indicated medical personnel determined were not related to his shunt. "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir.1994)).

WHEREFORE, for the reasons stated herein, the Commissioner's decision is AFFIRMED.